MATTHEW HANNAN
    Plaintiff

-against-

MARIA TORRES-SPRINGER in her position as
Commissioner of the New York City Department
of Housing Preservation and Development,
STEVEN ROTH in his capacity as CEO for
VORNADO REALTY TRUST, MICHAEL
FASCITELLI in his capacity as Managing Partner
for IMPERIAL COMPANIES, BRANDON
SHORENSTEIN in his capacity as Co-Chair of
SHORENSTEIN PROPERTIES LLC, AMY ROSE
in her capacity as President and CEO of ROSE
ASSOCIATES, KEVIN RODRIGUES, RAY "Doe",
DREW "Doe", ALEX "Doe" in their capacities as
Security Guards at HENRY HALL, YAMILE
ZARZUELA, in her capacity as Senior LIHTC
Compliance Administrator at Henry Hall.
    Defendants

18CV9878

_____CV_____ ( )( )

**COMPLAINT**

**JURY DEMAND**

Plaintiff, MATTHEW HANNAN, pro se, complains of the defendants herein,

## NATURE OF THE ACTION

1.      This is an action at law to redress the deprivation of rights secured to the

plaintiff under color of statute, ordinance, regulation, custom, and/or to

redress the deprivation of rights, privileges, and immunities secured to

the plaintiff by the First, Fourth, and Fourteenth Amendments to the

Constitution of the United States, by Title 42 U.S.C. §1983, Section 504 of the Rehabilitation Act of 1973, the Fair Housing Act and the Federal Trade Commission Act [and arising under the statutes and laws of the City and State of New York.]

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1983, 28 U.S.C. §1343, 28 U.S.C. §1331 and 28 U.S.C. § 1367, and under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4. Plaintiff is and was, at all times, material herein resident of the United States and the State of New York. The Plaintiff is a homosexual male of who suffers from HIV and has a disability. Although Plaintiff appears to not have a disability, he is only able to walk with pediatric assistance and his main source of income comes from SSI.

5. Henry Hall is the LIHTC property where the Premises are located.

6. The Premises are a very specific part of apartment 17D at 515 West 38th Street, New York City, New York comprising of a closet and a bed separated from the rest of the apartment by a shelf.

7. The Premises are a "dwelling" within the meaning of 42 U.S.C. §3602(b), and are located within the Southern District of New York.

8. At all relevant times, Maria Torres-Springer, Commissioner of the New York City Department of Housing Preservation and Development (HPD) a municipal organization under the City of New York existing under the laws of the State of New York and a Public Housing Administrator (PHA) for HUD, was upon belief herein resident of the United States and the State of New York.

9. At all relevant times, the defendant Steve Roth, CEO of Vornado Realty Trust, with principal business in New York City, New York, one of the companies that built and owns Henry Hall, was upon belief herein resident of the United States and the State of New York.

10. At all relevant times, the defendant Michael Fascitelli, a founding partner and a top manager at Imperial Companies, with principal business in New York City, New York, one of the companies that built and owns Henry Hall, was upon belief herein resident of the United States and the State of New York.

11.     At all relevant times, the defendant Brandon Shorenstein, Co-Chairman of Shorenstein Properties LLC, with principal business in San Francisco, California, one of the companies that built and owns Henry Hall, was upon belief herein resident of the United States and the State of California.

12.     At all relevant times, the defendant Amy Rose, CEO of Rose Associates, with principal business in New York City, New York is the (LIHCT) management company that runs the day-to-day operations at Henry Hall, was upon belief herein resident of the United States and the State of New York.

13.     At all relevant times, the defendants KEVIN RODRIGUES, RAY "Doe", DREW "Doe", ALEX "Doe" in their capacities as Security Guards (herein "defendant security guards" with "Doe" used when their last names are unknown) were, upon information and believe, and still are, agents and/or security guards employed by defendant Rose Associates and were upon belief herein residents of the United States and the State of New York.

14.     Vornado Realty Trust, along with Imperial Companies and Shorenstein Properties LLC, acquired the HUD financing from New York City Department of Housing Preservation and Development, built and are the owners of Henry Hall.

15.      Rose Associates was hired by the builders and owners of Henry Hall to manage the building, select the office and maintenance staff, the security guards, the janitors, in addition to selecting the tenants, prepare the leases, receive the rent payments and also do evictions.

16.      Some of Rose Associates employees work directly with the PHA taking care of the subsidized apartments.

17.      Yamile Zarzuela is Rose Associates' Senior LIHTC Compliance Administrator that works directly with government subsidized tenants. And Robert Werner is her boss at Rose Associates as the Managing Director of Multi-Family Management.

18.      The joint participant relationships that are formed between state and private entities that operate together to serve the public make that private entity an actor of the state. Plaintiff fearlessly claims that all the actions the Defendants perpetrated against him were actions from the "government". The interdependent relationships between all the defendants on this case and the government implies state action as it did in McQueen vs. Druker.

19.      All Defendants, with exception of the PHA, work for the owners and their actions represent actions of the owners against the Plaintiff.

## FACTUAL ALLEGATION COMMON TO ALL CAUSES OF ACTION

20. On February 1st, 2018, Plaintiff moved in with his friend of 15 years, Jimmie Orr, the tenant of record, and a mentally disabled homosexual man in his 40's that also has SSI as his source of income.

21. The Plaintiff had his own keys and paid rent to Jimmie for the Premises.

22. On or about February 1st, 2018, Plaintiff along with Jimmie, registered with the security guards by presenting an ID, taking a photo and signing his name, thus moving into the Premises with his friend Jimmie as a legal resident of the building.

23. On or about February 1st, 2018, Plaintiff moved in his furniture into the apartment with help from the building maintenance people.

24. As evidenced in letter from Yamile Zarzuela, Plaintiff's affirmation, Rose Associate executives' admission and the security guards that worked at the building's knowledge, Plaintiff was a resident of the Premises.

25. Plaintiff became a tenant after 30 days and entitled to legal protections of the law such as due process before eviction.

26. Towards the end of February, 2018, the security guards started to willingly and maliciously harass the Plaintiff with the intent of have him feel uncomfortable and move out voluntarily.

27. The harassment from the security guards started by not allowing Plaintiff to use the building facilities such as the gym. Additionally, the security

guards started to return to sender the mail that arrived at the building and was addressed to Plaintiff, and the security guards started to screen Plaintiff at the front desk as they would screen a guest to the building and only allow Plaintiff into the building upon consent from Jimmie, each time.

28. On March 7, 2018, Yamile Zarzuela wrote Jimmie a letter using threatening language and ordering him to illegally evict the Plaintiff without notice. Jimmie was very scared and didn't dare to disobey the letter that clearly stated:

> *"Since the time you have moved in to Henry Hall, Mr. Matthew Hannan has been residing in your unit…*
>
> *Mr. [Hannan] must vacate immediately."*

29. Defendants, acting against HUD regulations, discriminated against Plaintiff on the basis of his gender, sexual orientation and family size and marital status because no notice was ever given to Plaintiff, a member of Jimmy's household, and only discriminatory assumptions were made. Instead, Defendants decided to scare a mentally disabled person into doing their dirty work of illegally evicting the Plaintiff, and they did not follow proper procedures.

30.     Upon return home with a friend in the late evening of March 17, 2018, Plaintiff was kept from entering the building by the security guards.

31.     Plaintiff was escorted out of the building under threats of use of force and imprisonment. One of the security guards said, "get out of here or I will drag you out, and call the cops and get you arrested."

32.     The actions of the security guards were done under the direction of Defendant Rose Associates and LIHTC manager for the owners, all defendants involved are acting under the color of the law for the PHA abides by and answers to the Federal Government.

33.     In the early hours of the morning of March 18, 2018, Plaintiff was able to get a hold of Jimmie who allowed Plaintiff to get a few of his items, only what Plaintiff and a friend could carry in their arms.

34.     From that point on March 18, 2018, Plaintiff has been transient and unable to attain permanent housing and has been having to find lodging almost on on a day-to-day basis.

35.     Defying HUD rules that affirm "An owner must not evict any tenant except by judicial action pursuant to state and local laws." Laws have been broken against this Plaintiff and many other ones that are not able to complain with him, today, and his situation demands remedies according to City, State and Federal laws.

36. By the actions of defendants, Plaintiff has suffered, continues to suffer and will continue to suffer (a) emotional distress, embarrassment, lowered self-esteem, humiliation, shock, loss of liberty, loss of rights to familial association, damage to reputation, mental anguish, etc.; (b) destruction and loss of property, unanticipated fear for his future, loss of income, diminished earning capacity, decreased ability to earn income wages, and financial losses, etc.; (c) physical discomfort, debilitating physical pain, increased inability to walk or stand for reasonably periods of time, damage and increased lifetime physical detriment to his already existing disability that can lead to death or lost of limb, etc.

37. (a) Since March 18, 2018 to the day that this complaint has been signed, Plaintiff has suffered from the mental anguish of initially being dislodged and having to fend for shelter daily to presently still having to fight the same battle which has now lasted several months.

38. For when someone is labeled homeless in this society people automatically assume that you must have done something wrong to deserve that fate and your moral, reliability and character automatically receive a negative judgment.

39. (b) Plaintiff lost most of his belongings including, furniture, clothing, pieces of art and rare books amounting to $40,000.

40.      Included in that amount, Plaintiff had to sell his mobility device (an electric bicycle) so that he could have a place to stay during the lockout.

41.      Without an address because of the illegal lockout, and without a lease to show HRA, Plaintiff had his SNAP benefits highly reduced to only $15/month from the usual $193 others receive. Totally $1,246.00 in food costs that Plaintiff had to attain through other means.

42.      Plaintiff has suffered a loss of reputation, which also resulted in loss of additional SSA approved income of $1,100/month that Plaintiff was not able to attain after the illegal lockout took place and accruing to a total of $7,700.00.

43.      Plaintiff's camera and other clothing stolen that he used for his side job approved by SSA as a stylist and a photographer. All of Plaintiff photography and clothing used as work tools amounting to about $20,000 have been lost due to the actions of defendants.

44.      Plaintiff was never able to retrieve the remainder of his belongings until almost seven months later. Plaintiff's total loss of income, personal items, furniture, clothing, work equipment, rare books and art, loss of benefits and other belongings amount to a total of $68,946.00.

45.      (c) As will be proved during discovery, due to the actions of Defendants, Plaintiff now suffers from increased physical pain and has to reassess his

condition and will be facing one or all of these consequences: death, shorter life span, lower quality of life for the remainder of his life and/or loss of limb by the need of a high risk surgery that he had been able to postpone up until the time Defendants threw him on the streets.

46.     Plaintiff was not supposed to be doing all the walking that he is doing now that he is still living transiently with a new partner that is also about to be evicted. Often times, Plaintiff has to be moving from place to place and is alone to carry his belongings to the different places he gets to stay.

47.     As per medical orders, Plaintiff needs a lot of rest and time off his feet. Doctors have strictly ordered that plaintiff to not walk more than what is needed within his apartment, risking the loss of limb.

48.     Plaintiff's femur might have deteriorated to a level that is untreatable and this fact needs to assess during discovery.

49.     Since the lockout, plaintiff has had to walk several times carrying his belongings around the streets of New York City.

50.     Plaintiff's liver functions have also suffered since the lockout for not having a place to cook. Plaintiff was not allowed by defendants to go back to his place to gather his cooking item (pots, pans, utensils), is constantly forced to rely on highly process foods.

51. As an HIV and HEP B sufferer, Plaintiff has to rely on freshly cooked meals to maintain his kidney functions from declining. But Plaintiff has been unable to do that due to the illegal lockout by defendants and his liver functions have declined as of the date this complaint has been signed.

52. Plaintiff has unsuccessfully, since the illegal lockout, tried to attain other forms of his own housing but has not been able to find a new place.

53. Plaintiff sobriety has been put at risk as, during this transient period imposed by the Defendants, he has had to rely on people from his past for a place to stay, some of them still drug users. But Plaintiff has continued sober despite the challenges.

## PROCEDURAL HISTORY

54. Several times since the lockout, Plaintiff has tried to reach to his friend Jimmie Orr to pick up his items but was not allowed.

55. Jimmie was too fearful of losing his apartment to allow Plaintiff to come over.

56. It wasn't until Jimmie had secured a lease elsewhere and was ready to leave Henry Hall that he decided to communicate with Plaintiff and offer the key evidence mentioned in paragraph 28.

57. Plaintiff also tried to come back to the building several times after the lockout but was not allowed entry by the security guards.

58. On a last attempt for an out of court mediation, on July 24th, 2018, Plaintiff met with Defendant Rose and Associates at their main office in New York City.

59. In a meeting with Robert Werner, Plaintiff explained to defendant Rose and Associates that he is disabled and asked for his apartment back, but his request was denied. Mr. Werner admitted to knowing about the Plaintiff's illegal eviction but refused to help him.

60. On July 26th, 2018, Plaintiff attended a hearing at housing Court to request possession and entry to get his belongings from Jimmie's.

61. Acting pro se, Plaintiff failed to serve Jimmy properly and didn't have key evidence to prove his residence for the period required for statutory rights under Stave and City laws.

62. In court, defendant Rose and Associates denied Plaintiff's claims. Again taking away the Plaintiff's right to fight to regain possession by denying even knowing the Plaintiff.

63. That case is now under Appeal at the New York Supreme Court.

64. Plaintiff is now in possession of that key evidence and will present this court such evidence to prove his case.

65. Because on October 11, 2018 Jimmie finally communicated to Plaintiff to make things right by giving back some of Plaintiff's belongings and to explain that he was coerced by the management company to help them illegally evict Plaintiff.

66. Since Plaintiff left the Premises, Jimmie who himself is on disability for depression, is now voluntarily moving out of Henry Hall after several issues with management and harassment from the security guards for being gay.

67. Defendant Rose and Associates' letter gave Jimmie no time to cure and no explanation as to proceedings or a hearing. Thus violating Plaintiff's rights, as well, because by taking away Jimmie's rights, Defendants took away Plaintiff's rights. Most importantly, Plaintiff was never served.

68. Yamile Zarzuela had several legal options to go around the situation, Plaintiff could've legally stayed with Jimmie instead of being treated as a trespasser.

69. Plaintiff's eviction, was illegal and completely unnecessary and took away several of his rights under Federal, State and Municipal laws.

70. But neither Jimmie nor Plaintiff had a chance to make their case.

71. Plaintiff sobriety has been put at risk as, during this transient period imposed by the Defendants, he has had to rely on people from his past for

a place to stay, some of them still drug users. But Plaintiff has continued sober despite the challenges.

72.     Consequently, Plaintiff has been damaged and hereby demand compensatory (including emergency funds for medical expenses that are necessary discovery costs) and defendants, individually and severally.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

73.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 71 of this complaint as though fully set forth herein.

74.     The conduct of defendants, as described herein, amounted to malicious abuse of process, failure to intervene, unreasonable search and seizure, abuse of authority, unlawful taking of private property, pattern of harassment, conspiracy, discrimination, selective enforcement, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

75.     Such conduct described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments to the United States Constitution.

76. Consequently, Plaintiff has been damaged and hereby demands compensatory and punitive damages to be proven at trial against each of the defendants, individually and severally.

## SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/AND DISCIPLIE- against defendant New York City Department of Housing Preservation and Development

77. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 75 of this complaint as though fully set forth herein.

78. Defendant New York City Department of Housing Preservation and Development, acting through the owners of Henry Hall and their agent Rose and Associates, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its staff and security guards concerning correct practices in dealing with tenants, the use of force, lawful handling of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the taking away the rights and accusations and threats made to PHA tenants, and has failed to promulgate, put into effect and monitor the enforcement of

appropriate rules to ensure that illegal self-help evictions happen and lockouts.

79. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

## THIRD CAUSE OF ACTION: SECTION 504 OF
## THE REHABILITATION ACT OF 1973 and THE FAIR
## HOUSING ACT

80. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 78 of this complaint as though fully set forth herein.

81. The conduct of defendants, as described herein, had actual and/or de facto policies, practices, customs and/or usages of discrimination against family size and gender by assuming that Jimmie and Plaintiff weren't family, assuming that Jimmie lied instead of erred, abuse of power, not following eviction procedures towards disabled tenants, failing to do all efforts to contact disabled tenant and Plaintiff to explain the alternatives and how they could live together, if not aware before proceeding for failing to stop illegal eviction when advised orally and in writing that Plaintiff was disabled.

82.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

## FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

83.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 81 of this complaint as though fully set forth herein. By reason of the foregoing, and by harassing, discriminating and illegally evicting plaintiff and depriving the plaintiff of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

84.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as owners, agents, or employees. Defendants' acts were

beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendants acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

85.    Defendants, as owners, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

## FIFTH CAUSE OF ACTION: CITY and STATE Laws
## NYCAC § 26-521 and New York RPA § 713

86.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

87.    The conduct of defendants, as described herein, amounted to illegal eviction also knows as self-help eviction and illegal lockout by attempting to evict and evicting without due process a person that had been in possession of the Premises for more than 30 days by using or threating to use force. Evicting without a 10-day Notice to Quit, evicting a legal occupant entitled to possession who was in possession for more than 30 days.

88.    Additionally, after being requested in person and in writing to be restored to possession on July 24, 2018, Defendant Rose Associates failed to restore

Plaintiff to possession to a dwelling in the same unit or another suitable for occupancy.

### SIXTH CAUSE OF ACTION - Anti-Trust Laws - 15 US Code §45

89. This cause of action stems from the actions of Defendant Rose Associates that uses false advertisement and unfair and deceptive actions and practices in the activity of their commerce.

90. Motivated by tax breaks and from the income guaranteed by the government, for self grandeur and to hurt their competitor and cause pain and entice potential applicants to rent the properties that it manages but in fact is not able nor willing to provide services to the level that it advertises.

91. Plaintiff asserts that the responsible commission will find that all the Defendants are guilty of this offense.

92. Plaintiff was deceived through false advertisement and a marketing campaign that included highly elaborate PR stunts, photographic shoots, editorials, testimonials and other highly sophisticated forms of advertisement to convey the idea of a business that runs according to City, State and Federal by so generously contributing to society by offering low-income housing but in reality maliciously and wilfully threatens to hurt and also in all actuality injures it's residents, that it feels don't fit into the

mold they are trying to use to keep their image and discriminate against them and harass them until they get rid of them at any cost to that person.

93.     Plaintiff also affirms that according to 15 US Code §26 he is able to bring this Federal Trade Commission law into action.

WHEREFORE, Plaintiff respectfully pray for judgment as follows:

a. Granting of immediate monetary substitution injunction filed concurrently with this complaint.

b. Repossession to a suitable apartment in the same building free of discrimination on Plaintiff's gender, sexual orientation and family size.

c. For compensatory damages against all defendants in an amount to be proven at trial such as emotional and physical pain and suffering, intentional infliction of emotional distress, intentional infliction of physical pain for profiteering and denial of rights, discrimination and infliction of lifetime injuries to a disabled person.

d. For exemplary and punitive damages, including but not limited to treble damages (NYRPP §853) and other City and State and Federal penalties to Plaintiff, against all defendants in an amount to be proven at trial.

e. For costs of suit herein, including Plaintiff's reasonable attorney's fee and other legal costs;

and;

f. For such other and further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by Jury.

Respectfully,

Dated:     October 25, 2018
           Manhattan, New York City

Matthew Hannan, Plaintiff
481 8th Avenue, 2565
New York City, New York 10001
Cell Phone 646-724-0212
Email: imjt4ny@iCloud.com