UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW HANNAN,

                              Plaintiff,

            - v -

AMY ROSE et al.,

                              Defendants.

**ORDER**

18 Civ. 9878 (PGG) (DF)

PAUL G. GARDEPHE, U.S.D.J.:

> Pro se Plaintiff Matthew Hannan brings this action under federal, state, and local law challenging his eviction from a Manhattan apartment.  (Cmplt. (Dkt. No. 2))  Defendants Amy Rose, Kevin Rodrigues, and Yamile Zarzuela have moved to dismiss.  Magistrate Judge Debra Freeman submitted a Report and Recommendation ("R&R") recommending that this Court grant in part and deny in part the motion.  (R&R (Dkt. No. 76) at 38)[1]  This Court will adopt the R&R as set forth below.

**BACKGROUND**

I.      **FACTS**[2]

> Plaintiff is "a homosexual male [] who suffers from HIV and has a disability." (Cmplt. (Dkt. No. 2) ¶ 4)  On February 1, 2018, Plaintiff moved into an apartment in Henry Hall in Manhattan.  Plaintiff's friend Jimmie Orr is the "tenant of record" for the apartment.  (Id. ¶¶ 6, 20)  Henry Hall is managed by Rose Associates, which receives government funding for

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

providing low-income housing.  (Id. ¶¶ 5, 12, 15)  Each of the moving Defendants is employed by Rose Associates:  Rose serves as chief executive officer of Rose Associates; Rodrigues is a security guard for Rose Associates; and Zarzuela is the Senior Low-Income Housing Tax Credit Compliance Administrator for Rose Associates. (Id. ¶¶ 12-13, 17)

Plaintiff paid Orr $700 per month to live in the apartment.  Plaintiff had a set of keys for the apartment; had "registered with security guards of Henry Hall by presenting an ID, taking a photo and signing his name"; and was assisted by Henry Hall employees in moving his furniture into the apartment.  For all these reasons, Plaintiff claims that he was a "legal resident of the building."  (Id. ¶¶ 21-23)

In late February 2018, building security personnel began to "harass" Plaintiff by barring him from the gym and rejecting his mail; they also "screen[ed]" him as a guest at the front desk.  (Id. ¶¶ 26-27)  In a March 7, 2018 letter to Orr, Zarzuela noted that Plaintiff had been living in Orr's apartment and must "vacate immediately."  (Id. ¶ 28)  On March 17, 2018, Orr informed Plaintiff that Rose Associates "didn't want [Plaintiff] back in [the apartment]."  (Pltf. Aff. (Dkt. No. 9) ¶ 23)  When Plaintiff attempted to retrieve his belongings from the apartment, security guards refused to let him in the building, stating that they would "drag [Plaintiff] out . . . and get [him] arrested."  (Cmplt. (Dkt. No. 2) ¶¶ 30-31)  Plaintiff returned several times, "but was not allowed entry by the security guards" except on one occasion – "almost seven months later" – when he was allowed to retrieve his belongings.  (Id. ¶¶ 34, 44, 57)

At some point after March 17, 2018, Plaintiff brought an action in the Housing Part of the New York City Civil Court, New York County (the "Housing Court Action"), against Rose Associates and "Jimmy Orr."  In this action, Plaintiff asserted a right to possession of the apartment.  (Id. ¶ 60)  In connection with his state court lawsuit, Plaintiff appeared at a July 26,

2018 hearing before Housing Court Judge Anne Katz. Plaintiff states that he did not have "key evidence to prove his residence for the period required for statutory rights under Sta[t]e and City laws." (Id. ¶¶ 60-61) After the hearing, Judge Katz issued the following order denying Plaintiff's motion for possession of the apartment:

> Motion denied.
> Service on Jimmy Orr was not proper. A doorman is not a person who can accept service for a tenant.
> As for the Landlord, they had nothing to do [with] either the letting or the alleged lockout.
> Furthermore movant has been out since March 17, 2018.
> For all these reasons there is no basis to restore petitioner to possession.

(Decision and Order, Hannan v. Rose Associates, Jimmy Orr, Index No. 16056/18 (N.Y. Civil Ct.) (Dkt. No. 33-5))[3] Plaintiff filed an appeal but did not perfect it. (Pltf. May 6, 2019 Ltr. (Dkt. No. 62) at 2)

## II.   PROCEDURAL HISTORY

The Complaint was filed on October 25, 2018, and pleads the following causes of action, all of which are predicated on the alleged eviction: (1) a Section 1983 claim premised on Defendants' violation of Plaintiff's constitutional rights (Cmplt. (Dkt. No. 2) ¶¶ 74-75); (2) family size, gender, and disability discrimination under the federal Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. (id. ¶ 81); (3) violation of Plaintiff's rights under Article 1 of the New York State constitution (id. ¶ 83); (4) eviction without a court order, in violation of New York City Administrative Code § 26-251 (id. ¶ 87); (5) failure to provide "a 10-day Notice to Quit," in violation of New York City Administrative Code § 713 (id.); and (6) false advertising in violation of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 et seq. (id. ¶ 92).

---

[3] Judge Katz's decision is not dated. (Id.)

The moving Defendants have moved to dismiss all the claims against them. (Mot. (Dkt. No. 31))  Plaintiff has filed a brief styled as a "motion for summary judgment," which this Court will construe as Plaintiff's opposition to Defendants' motion to dismiss.[4]  (Dkt. No. 42)  On September 18, 2019, this Court referred Defendants' motion to dismiss to Magistrate Judge Freeman for an R&R.  (Dkt. No. 67)

## III.   JUDGE FREEMAN'S R&R

On February 28, 2020 Judge Freeman issued a thorough 40-page R&R concerning Defendants' motion to dismiss.  (R&R (Dkt. No. 76))  Judge Freeman begins by addressing subject matter jurisdiction.

Judge Freeman rejects Defendants' argument that Plaintiff's claims are barred by the Rooker-Feldman doctrine, concluding that his claims do not "'invit[e] District Court review and rejection' of the Housing Court's decision."  (Id. at 20 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983))

As to Plaintiff's FTCA claim, Judge Freeman recommends dismissal, finding that Plaintiff lacks standing because "there is no private right of action under 15 U.S.C. § 45."  (R&R (Dkt. No. 76) at 20-21)

As to Plaintiff's FHA claim, Judge Freeman finds that Plaintiff has standing, because he plausibly alleges that he is an "aggrieved person" in light of "the broad scope of the [FHA]."  (Id. at 23)

---

[4]  At a June 5, 2019 conference, Plaintiff told Judge Freeman that he wanted his "motion for summary judgment" to be treated as his opposition to Defendants' motion to dismiss.  (June 5, 2019 Tr. (Dkt. No. 68)) at 10-11)

As to Plaintiff's New York City Administrative Code, Section 713 claim, Judge Freeman recommends dismissal, concluding that because Defendants "did not commence – and, under the law, were not required to commence – a special proceeding under Section 713," Plaintiff has no cognizable claim under Section 713.  (Id. at 28)

As to Plaintiff's Section 1983 claims, and claim under the New York State constitution, Judge Freeman recommends dismissal, because "Plaintiff has not adequately pleaded that Defendants were state actors."  (Id. at 28-29, 33)

As to Plaintiff's Rehabilitation Act claim, Judge Freeman finds that Defendants have not demonstrated that Plaintiff is not a "qualified individual" under the Act.  Accordingly, she recommends that Defendants' motion to dismiss be denied as to that claim.  (Id. at 35)

As to Plaintiff's claim under New York City Administrative Code, Section 26-251, Judge Freeman finds that this provision covers "lawful occup[ants]" of a dwelling, and that Plaintiff may have "resid[ed] in the apartment for more than 30 days as a lawful licensee." Accordingly, Judge Freeman recommends denying Defendants' motion to dismiss as to that claim.  (Id. at 36-38)

## IV.    OBJECTIONS TO THE R&R

Both sides have filed objections to the R&R.[5]  (Def. Obj. (Dkt. No. 78); Pltf. Obj. (Dkt. No. 82))

---

[5] Plaintiff has moved to strike Defendants' objections as untimely.  (Dkt. Nos. 83, 86, 87) Plaintiff's request is denied.  Judge Freeman issued the R&R on February 28, 2020 and stated that "the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail)." (R&R (Dkt. No. 76) at 40)  Neither side filed objections by March 13, 2020.  Plaintiff filed a request for an extension on March 14, 2020 (Dkt. No. 77), and later explained that he had had difficulty in accessing the ECF system.  (See Dkt. No. 83)  On March 16, 2020, this Court granted Plaintiff an extension to March 20, 2020.  (Dkt. No. 80)  Defendants filed their objections on March 16, 2020 (Dkt. No. 78), and the following day asked this Court to treat the objections as timely because Defendants had misunderstood the deadline set forth in the R&R.

Defendants make the following objections:

(1) the <u>Rooker-Feldman</u> doctrine bars Plaintiff's claims because "the relief Plaintiff is seeking is for this Court to overturn the state housing court's order that already adjudicated over Plaintiff's removal from Henry Hall" (Def. Obj. (Dkt. No. 78)) at 9);

(2) "Plaintiff's unlawful occupancy . . . vitiates his ability to bring a claim under the FHA" and Plaintiff has otherwise failed to allege the elements of an FHA violation. (<u>id.</u> at 11);

(3) Plaintiff's claims under the Rehabilitation Act and New York City Administrative Code Section 26-251 "are deficiently pled" because of Plaintiff's "unlawful occupancy" in Orr's apartment (<u>id.</u> at 13-14);

(4) Plaintiff should not be given leave to amend his Section 1983 and state constitutional claims because he "does not – because he cannot – allege that [] Defendants, as individuals, received [government] funding." (<u>Id.</u> at 14)

In Plaintiff's objections, he mistakenly seeks "leave to use correct names of 'Doe' Defendants and [to] update the case caption," and to add new allegations and reorganize his existing allegations. (Pltf. Obj. (Dkt. No. 82)) These are not objections but are rather requests to amend. As to the R&R, Plaintiff appears to have only one actual objection: that his Section 1983 and state constitutional claims should be allowed to proceed, because "all defendants involved were performing a job of the state and are state actors." (<u>Id.</u> at 9)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely objection has been made to a

---

(Dkt. No. 81) Given that both sides (1) filed extension requests after the original deadline of March 13, 2020; and (2) filed objections before March 20, 2020, fairness dictates that this Court consider both sides' objections.

magistrate judge's recommendation, the district court judge "shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  <u>Id.</u>  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke <u>de novo</u> review.'"  <u>Phillips v. Reed Grp., Ltd.</u>, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting <u>Vega v. Artuz</u>, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in <u>Phillips</u>).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." <u>Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.</u>, 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing <u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); <u>Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan</u>, 806 F.Supp. 380, 382 (W.D.N.Y.1992)); <u>see also</u> <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing <u>Vega</u>, 2002 WL 31174466, at *1; <u>Greene v. WCI Holdings</u>, 956 F.Supp. 509, 513 (S.D.N.Y. 1997)).

For portions of the R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  <u>Wingate v. Bloomberg, 2011 WL 5106009</u>, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

**B.**     **Rule 12(b)(6) Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff" id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle N.E. Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly. . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder,

175 F. Supp. 3d at 87 (internal citations omitted).  Moreover, "the court need not accept as true

'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ.

1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide

Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even

for purposes of a pro se complaint, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal,

556 U.S. at 678).

## II.   ANALYSIS

### A.   Whether the *Rooker-Feldman* Doctrine Bars Plaintiff's Suit

Judge Freeman concludes that the Rooker-Feldman doctrine does not bar

Plaintiff's claims, because Plaintiff does not "'invit[e] District Court review and rejection'" of

the Housing Court's decision.  (R&R (Dkt. No. 76) at 20 (quoting Exxon Mobil, 544 U.S. at

284))  Defendants object to Judge Freeman's finding on this point, arguing that the Rooker-

Feldman doctrine bars Plaintiff's claims because "the relief Plaintiff is seeking is for this Court

to overturn the state housing court's order that already adjudicated over Plaintiff's removal from

Henry Hall."  (Def. Obj. (Dkt. No. 78) at 9)[6]

The Rooker-Feldman doctrine provides that federal district courts lack subject

matter jurisdiction over cases "brought by state-court losers complaining of injuries caused by

---

[6]  Defendants' objection largely mirrors the arguments they made before Judge Freeman.
(Compare Def. Obj. (Dkt. No. 78) at 7-10 with Def. Br. (Dkt. No. 32) at 14-15)  To the extent
that Defendants "rehash . . . the same arguments set forth in [their] opposition brief" (see Vega,
2002 WL 31174466, at *1), this Court reviews the R&R only for clear error.  Indymac Bank,
F.S.B., 2008 WL 4810043, at *1; Ortiz, 558 F. Supp. 2d at 451.  To the extent Defendants have
made new arguments, the Court considers them de novo.  See Idlisan v. Mount Sinai Med. Ctr.,
No. 12-cv-8935 (PAC)(RLE), 2015 WL 136012, at *2 (S.D.N.Y. Jan. 9, 2015) ("When a party
makes a timely objection raising new arguments, the contested portions are reviewed de novo.").

state-court judgments rendered before the federal district court proceedings commenced and

inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284.

Federal district courts retain jurisdiction over cases "present[ing] some independent claim, albeit

one that denies a legal conclusion that a state court has reached in a case to which [the loser] was

a party." Id. at 293.

> The Second Circuit has instructed that
>
> > a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state court judgment that only the Supreme Court can hear.

Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 88 (2d Cir. 2005).

Here, the Housing Court rejected Plaintiff's petition – brought against Rose

Associates and "Jimmy Orr," who are not parties here – to restore him to possession of the

apartment.  (Decision and Order, Hannan v. Rose Associates, Jimmy Orr, Index No. 16056/18

(N.Y. Civil Ct.) (Dkt. No. 33-5))

Judge Freeman concludes that Plaintiff's alleged injury in the instant lawsuit is

"eviction from the apartment at Henry Hall," and that that injury "was not caused by the Housing

Court judgment."  (R&R (Dkt. No. 76) at 19 (emphasis in original))  Indeed, Plaintiff was barred

from Henry Hall on March 17, 2018 (Cmplt. (Dkt. No. 2) ¶ 30), and the Housing Court order

was not issued until after the July 26, 2018 hearing.  (Id. ¶¶ 60-63)  Accordingly, Judge Freeman

was correct in finding that "Plaintiff's eviction [from the Henry Hall apartment] was a

'preexisting injury' that 'existed in its exact form prior to the state-court judgment.'"  (R&R

(Dkt. No. 76) at 19 (quoting McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007))

The post-Exxon Mobil cases cited by Defendants (Def. Obj. (Dkt. No. 78) at 10) are not to the contrary.  In Thompson v. Donovan – where the court applied the Rooker-Feldman doctrine to bar plaintiffs' suit – "[p]laintiffs attempt[ed] to challenge the decision, reached by the Yonkers City Court, that Landlord could evict [p]laintiffs based on a failure to pay 'additional rent' in the form of electricity charges."  Thompson v. Donovan, No. 13-CV-2988 CS, 2014 WL 5149037, at *12 (S.D.N.Y. Oct. 14, 2014).  The gravamen of the complaint in Thompson was that, as a result of the Yonkers City Court's ruling, plaintiffs would "'all face[] eviction from Riverview' for 'nonpayment of . . . electrical utility arrears . . . .'"  Id.  In contrast to the instant case, in Thompson it was the state court's decision that caused injury to plaintiffs:  in ruling that landlords could evict tenants who failed to pay electricity charges, the state court exposed plaintiffs to a risk of eviction.

Gifford v. United N. Mortg. Bankers, Ltd., No. 18 Civ. 6324 (PAE) (HBP), 2019 WL 2912489, at *6 (S.D.N.Y. July 8, 2019), is likewise of no assistance to Defendants.  In Gifford, the court explicitly found that plaintiff's "injuries, assuming they exist, were 'directly caused by the adverse judgment in the [state court] [f]oreclosure [a]ction.'"  2019 WL 2912489, at *6.  There are no such facts here.

This Court finds no clear error in Judge Freeman's finding that the Rooker-Feldman doctrine does not bar Plaintiff's action.

**B.** **Whether Plaintiff Has Standing Under the FHA**

Judge Freeman finds that Plaintiff has standing under the FHA, because he plausibly alleges that he is an "aggrieved person" in light of "the broad scope of the [FHA]."  (Id. at 23)  In their objections, Defendants argue that "Plaintiff's unlawful occupancy . . . vitiates his

ability to bring a claim under the FHA." (Def. Obj. (Dkt. No. 78) at 11) They further argue – for the first time – that Plaintiff has not alleged the elements of an FHA violation. (Id.)

The FHA makes it unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of [race, color, religion, sex, familial status, national origin, or handicap]," or "[t]o discriminate . . . in the provision of services or facilities in connection [with a sale or rental]" based on any of those protected characteristics. 42 U.S.C. § 3604(a), (b), (f). Any "aggrieved person may commence a civil action" to remedy a violation of the Act. 42 U.S.C. § 3613(a). The Supreme Court "has repeatedly written that the FHA's definition of person 'aggrieved' reflects congressional intent to confer standing broadly . . . as broadly as is permitted by Article III of the Constitution." Bank of Am. Corp. v. City of Miami, Fla., 581 U.S. __, 137 S. Ct. 1296, 1303 (2017).

Defendants' first point – that as an unlawful tenant Plaintiff lacks standing – merely rehashes the argument they made before Judge Freeman. (Compare Def. Obj. (Dkt. No. 78) at 11 with Def. Br. (Dkt. No. 32) at 18) Defendants rely on the same case – Walker v. Cox, No. 95 Civ. 1219, 1999 WL 294723, at *1 (E.D.N.Y. Mar. 17, 1999) – that Judge Freeman finds to not supported by "the text of the [FHA]." (Def. Obj. (Dkt. No. 78) at 11; R&R (Dkt. No. 76) at 22-23) Because this argument is a rehash of the argument rejected by Judge Freeman, this Court reviews Judge Freeman's recommendation only for clear error. Phillips, 955 F. Supp. 2d at 211; Vega, 2002 WL 31174466, at *1.

The text of the FHA does not contain any limitation on "aggrieved person," and recent Supreme Court precedent does not suggest such a limitation. See City of Miami, Fla., 137 S. Ct. at 1303. Plaintiff has plausibly alleged that he is aggrieved in that he suffered an eviction

as a result of discrimination premised on a number of prohibited bases.  The Court concludes that

Judge Freeman's finding that Plaintiff has standing under the FHA is not clearly erroneous.

Defendants' remaining arguments – that the FHA does not offer protection

against discrimination on the basis of disability in connection with evictions, and that Plaintiff

has not sufficiently alleged disparate treatment based on sex or familial status – are all raised for

the first time in their objections.  (Def. Obj. (Dkt. No. 78) at 11; see also R&R (Dkt. No. 76) at

22 (noting Defendants' failure to raise such arguments))  Accordingly, this Court will review

these arguments de novo.  Idlisan, 2015 WL 136012, at *2.

As an initial matter, Defendants misstate the law in contending that "[p]ortions of

the FHA governing eviction or denying a usage of an apartment unit do not include disability as

a protected category."  (Def. Obj. (Dkt. No. 78) at 11)  This argument is premised on 42 U.S.C. §

3604(a), but another section of the FHA plainly makes it unlawful "[t]o discriminate in the sale

or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a

handicap. . . ."  42 U.S.C. § 3604(f).  Given that it is undisputed that Plaintiff has alleged that he

was evicted because of his disability (see Def. Obj. (Dkt. No. 78) at 11), Plaintiff has stated an

FHA claim for disability discrimination.

Accordingly, this Court will adopt Judge Freeman's recommendation that the

motion to dismiss be denied as to Plaintiff's FHA claim.

### C.     Rehabilitation Act Claim

Judge Freeman finds that Defendants had not demonstrated that Plaintiff is not a

"qualified individual" under the Rehabilitation Act.  (R&R (Dkt. No. 76) at 35)  Judge Freeman

also rejects Defendants' argument that, "'[t]o establish a Section 504 claim, a plaintiff must

receive federal funding that is tied to defendant's purported discriminatory action.'"  Judge

13

Freeman concludes that "the Rehab[ilitation] Act has no requirement that a plaintiff 'receive federal funding.'" (Id. at 34 (quoting Def. Br. (Dkt. No. 76) at 18))

In their objections, Defendants contend that Plaintiff's Rehabilitation Act claim must be dismissed, because of his "unlawful occupancy" of Orr's apartment. (Def. Obj. (Dkt. No. 78) at 13-14) Defendants further contend that "[t]he Complaint is completely devoid of any assertions that these individual defendants of a property management company (which does not receive any federal money) were recipients of federal assistance." Defendants argue that the absence of such allegations renders Plaintiff's Rehabilitation Act claim defective. (Id. at 12)

Defendants' second argument is new. As set forth above, before Judge Freeman, Defendants argued that it was necessary that Plaintiff receive federal funding. (R&R (Dkt. No. 76) at 34 (quoting Def. Br. (Dkt. No. 76) at 18))[7] In any event, this Court will review Defendants' second argument de novo. Idlisan, 2015 WL 136012, at *2.

Plaintiff has not alleged that the moving Defendants received federal funding. (See Cmplt. (Dkt. No. 2) ¶¶ 12-17) Moreover, the Rehabilitation Act protects "qualified individuals" from being "subjected to discrimination under any program or activity receiving Federal financial assistance . . . ," 29 U.S.C. § 794(a), and "program or activity" is defined to include "an entire corporation, partnership, or other private organization, or an entire sole proprietorship," but not individuals. Id. § 794(b). This Circuit has held that "§ 504 of the Rehabilitation Act [does not] provide[] for individual capacity suits against state officials," Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001), and the lower

---

[7] Defendants likely made a typographical error. The case they cited, O'Neill v. Hernandez, provides that, "[t]o establish a violation under Section 504 of the Rehabilitation Act . . . the defendants must receive federal funding." O'Neill v. Hernandez, No. 08 Civ. 1689 (KMW), 2010 WL 1257512, at *1 (S.D.N.Y. Mar. 25, 2010).

courts have concluded that the statute does not impose liability on individual employees of private entities.  See, e.g., Pell v. Trustees of Columbia Univ. in City of New York, No. 97 CIV. 0193 (SS), 1998 WL 19989, at *10 (S.D.N.Y. Jan. 21, 1998) (dismissing Rehabilitation Act claims against university employees); Meling v. St. Francis Coll., No. 95-CV-3739 JG, 1997 WL 1068681, at *8 (E.D.N.Y. Apr. 1, 1997) (same); Romand v. Zimmerman, 881 F. Supp. 806, 812 (N.D.N.Y. 1995) (dismissing Rehabilitation Act claims against hospital employees).

Accordingly, Plaintiff's Rehabilitation Act claim against the moving Defendants will be dismissed.

### D.    Administrative Code, Section 26-521(a) Claim

Judge Freeman finds that N.Y.C. Admin. Code § 26-521(a) applies to "lawful occup[ants]" of a dwelling, and that Plaintiff may have "resid[ed] in the apartment for more than 30 days as a lawful licensee."  Accordingly, she recommends that Defendants' motion to dismiss this claim be denied.  (R&R (Dkt. No. 76) at 36-37)

In their objections, Defendants contend that Plaintiff's Section 26-521(a) claim must be dismissed, because of Plaintiff's "unlawful occupancy" of Orr's apartment.  (Def. Obj. (Dkt. No. 78) at 13-14)  This objection merely rehashes Defendants' arguments before Judge Freeman.  (Compare Def. Obj. (Dkt. No. 78) at 13-14 with Def. Br. (Dkt. No. 32) at 19)  Accordingly, as to this point, the R&R will be reviewed only for clear error.  Phillips, 955 F. Supp. 2d at 211; Vega, 2002 WL 31174466, at *1.

Section 26-521(a) makes it

> unlawful for any person to evict . . . an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer . . . , except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order by . . . using or threatening the use of force to induce the occupant to vacate the dwelling unit.

N.Y.C. Admin. Code § 26-521(a)(1).

Judge Freeman concludes that whether Plaintiff was an "unlawful occupan[t]" for purposes of Section 26-521(a) presents an issue of fact, because resolution of the issue depends on Plaintiff's arrangement with Orr regarding occupancy of the apartment.  (R&R (Dkt. No. 76) at 37)  The Complaint pleads that "Plaintiff had his own keys and paid rent to [Orr] for the [apartment]."  (Cmplt. (Dkt. No. 2) ¶ 21)

In their objections, Defendants assert that Plaintiff admits that he "unlawfully lived in the unit by paying rent to Mr. Orr, in clear contradiction and violation of the lease." (Def. Obj. (Dkt. No. 78) at 13 (citing Cmplt. (Dkt. No. 2) ¶ 21))  Defendants note that the lease prohibits "[s]ubletting Tenant's Unit or any part of Tenant's Unit," and states that the lease is subject to termination "if Tenant permits any such occupancy for a longer period [than 31 days], without Landlord's prior consent. . . ."  (Id. (citing Lease, Ex. A (Dkt. No. 34-1) at 50))

Judge Freeman concludes, however, that the Complaint's factual allegations regarding Plaintiff's rent arrangement with Orr and Defendants' acquiescence to Plaintiff's occupancy of the apartment suggest that Plaintiff may have been a lawful licensee.  (R&R (Dkt. No. 76) at 25)  In this regard, Judge Freeman notes that Defendants had neither "address[ed] how any financial relationship between Plaintiff and Orr, or Defendants' alleged notice of and acquiescence in Plaintiff's shared occupancy of the apartment . . . may have affected Plaintiff's status or his rights," nor "explain[ed] what Plaintiff's status was, if not that of a 'lawful tenant' – for instance, whether he could have been considered a licensee – and how such status would affect his ability to assert claims under the various laws he invokes."  (Id.)  And "[i[f Plaintiff had been residing in the apartment for more than 30 days as a lawful licensee, then Plaintiff may potentially have a viable argument that Defendants violated his rights under Section 26-521(a)

by removing him from the apartment. . . ."  (Id. at 37 (citing Andrews v. Acacia Network, 70

N.Y.S.3d 744, 746 (N.Y. App. Term. 2018); Chow v. 86 Bay LLC, 108 N.Y.S.3d 688 (Civ. Ct.

N.Y. Cty. 2018)))

As discussed above, the Complaint pleads that Defendants consented or

acquiesced to Plaintiff's occupancy of the apartment by allowing him to register at the front desk

and collect mail for a period of time, and by assisting him in moving his furniture into the

apartment.  (Cmplt. (Dkt. No. 2) ¶¶ 21-23, 27)  Judge Freeman correctly notes that Defendants

have not adequately addressed the potential consequences of their "notice [of] and acquiescence

to" Plaintiff's occupancy of the apartment.  (R&R (Dkt. No. 76) at 25)  And in their objections,

Defendants still fail to address this subject, citing only to the lease, which explicitly contemplates

the possibility of landlord consent.  (See Def. Obj. (Dkt. No. 78) at 13 (citing Lease, Ex. A (Dkt.

No. 34-1) at 50))

In support of their objections, Defendants cite Tantaro v. Common Ground

Community Hous. Dev. Fund, Inc., No. 152701/2103, 2015 WL 1227944 (Sup. Ct. N.Y. Cty.

Mar. 17, 2015) for the proposition that "moving into and residing in an apartment for more than

thirty days does not provide an individual protection under the Admin Code."  (Id. (citing

Tantaro, 2015 WL 1227944, at *7))  Tantaro is distinguishable, however, on multiple grounds.

As an initial matter, Tantaro is a decision at summary judgment, and not on a motion to dismiss.

The factual record was fully developed and clear in Tantaro; that is not true here.  Moreover, the

plaintiff in that case "record[ed] her entries and exits from the Building as a 'visitor'" and "never

paid rent. . . ."  Tantaro, 2015 WL 1227944, at *6-7.  As discussed above, the Complaint alleges

that Plaintiff was not treated as a visitor for most of his tenure at Henry Hall and that he paid

rent.  The lease at issue in Tantaro – at least as presented in the decision – does not contain the

landlord consent provision noted above.  Finally, <u>Tantaro</u> addresses a different provision of Section 26-521(a).  While Plaintiff's claim is premised on his occupancy for 30 or more days under Section 26-521(a)(1) (<u>see</u> Cmplt. (Dkt. No. 2) ¶ 87), Tantaro's claim was premised on Section 26-521(a)(3), which addresses "'occupant[s] of a dwelling unit who . . . [have] made a request for a lease for such dwelling unit pursuant to the hotel stabilization provisions of the rent stabilization law.'"  <u>Tantaro</u>, 2015 WL 1227944, at *6 (quoting N.Y.C. Admin. Code § 26-521(a)(3)).

Judge Freeman relies instead on <u>Andrews v. Acacia Network</u>, 70 N.Y.S.3d 744, 746 (N.Y. App. Term. 2018).  In <u>Andrews</u>, plaintiff shared a room in a "supportive living facility operated by [defendant] for individuals with substance abuse problems."  70 N.Y.S.3d at 745.  After he was evicted, plaintiff filed a proceeding seeking to regain possession.  The court denied plaintiff's petition for repossession, noting that he had signed an attestation acknowledging that he had no tenancy rights.  The court noted, however, that while the Administrative Code "do[es] not operate to change a license or other nonpossessory interest into a possessory interest[,] . . . [it] may 'subject a violator to criminal liability and civil penalties . . . .'"  <u>Andrews</u>, 70 N.Y.S.3d at 746 (quoting <u>Clarke v. Copenhagen Leasing, L.P.</u>, 12 N.Y.S.3d 489, 490 (N.Y. App. Term 2015)); <u>see</u> <u>also</u> <u>Chow</u>, 108 N.Y.S.3d at 688 (N.Y. Civ. Ct. 2018) (quoting <u>Andrews</u> with approval).

Suffice it to say that the cases cited by Judge Freeman suggest that Plaintiff may have remedies available to him under Section 26-521(a) other than repossession, should he prove his allegations that he was a lawful licensee as a result of Defendants' consent or acquiescence.  Accordingly, dismissal of Plaintiff's Section 26-521(a) claim would be premature.

E.      **Section 1983 and New York State Constitution Claims**

Judge Freeman finds – as to Plaintiff's Section 1983 and New York State

constitution claims – that "Plaintiff has not adequately pleaded that Defendants were state

actors."  Accordingly, she recommends dismissal of these claims.  (R&R (Dkt. No. 76) at 28-29)

Plaintiff objects to Judge Freeman's recommendation, and makes a number of

arguments as to why the moving Defendants are state actors.  (Pltf. Obj. (Dkt. No. 82) at 6-9)

"Under 42 U.S.C. § 1983, constitutional torts are only actionable against state

actors or private parties acting 'under the color of' state law."  Betts v. Shearman, 751 F.3d 78,

84 (2d Cir. 2014) (citing Ciambriello v. Cty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)).  "To

act under color of state law, a private party's allegedly unconstitutional conduct must b[e] 'fairly

attributable to the state.'"  Chodkowski v. City of New York, No. 06 CV 7120(LBS), 2007 WL

2717872, at *8 (S.D.N.Y. Sept. 11, 2007) (quoting Bishop v. Toys "R" Us–NY LLC, 414 F.

Supp. 2d 385, 396 (S.D.N.Y. 2006), aff'd sub nom. Bishop v. Toys R Us, 385 F. App'x 38 (2d

Cir. 2010)).

"Conduct that is ostensibly private can be fairly attributed to the state only if there

is 'such a "close nexus between the State and the challenged action" that seemingly private

behavior "may be fairly treated as that of the State itself."'"  Tancredi v. Metro. Life Ins. Co.,

316 F.3d 308, 312 (2d Cir. 2003) (quoting Brentwood Acad. v. Tennessee Secondary Sch.

Athletic Ass'n, 531 U.S. 288, 295 (2001)).  The necessary analysis is commonly referred to as

the "joint action" or "close nexus" test.  Sybalski v. Indep. Grp. Home Living Program, Inc., 546

F.3d 255, 257 (2d Cir. 2008).

"To establish joint action, a plaintiff must show that the private citizen and the

state official shared a common unlawful goal; the true state actor and the jointly acting private

party must agree to deprive the plaintiff of rights guaranteed by federal law." Bang v. Utopia Rest., 923 F. Supp. 46, 49 (S.D.N.Y. 1996) (citing Cunningham v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106, 107-08 (7th Cir. 1991)). "'The touchstone of joint action is often a "plan, prearrangement, conspiracy, custom, or policy" shared by the private actor and the [true state actor].'" Rodriguez v. Winski, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (quoting Forbes v. City of New York, No. 05 Civ. 7331(NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello, 292 F.3d at 324 (citing Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992)).

"When a state is not involved directly in 'the events at issue,' a corporation's actions may nonetheless be attributable to the state 'if "the relevant facts show pervasive entwinement to the point of largely overlapping identity" between the State and the entity.'" Am. Atheists, Inc. v. Port Auth. of NY & NJ, 936 F. Supp. 2d 321, 331 (S.D.N.Y. 2013), aff'd sub nom. Am. Atheists, Inc. v. Port Auth. of New York & New Jersey, 760 F.3d 227 (2d Cir. 2014) (quoting Horvath v. Westport Library Ass'n, 362 F.3d 147, 154 (2d Cir. 2004); Lown v. Salvation Army, Inc., 393 F. Supp. 2d 223, 244 (S.D.N.Y. 2005)).

Here, Judge Freeman finds that "Plaintiff's allegation that the [m]oving Defendants, in their capacity as officers or employees of a private entity, accepted government financing for the provision of low-income housing is insufficient to raise a plausible inference that Defendants were state actors." (R&R (Dkt. No. 76) at 31) In support of this finding, Judge Freeman notes that "the provision of housing, even so-called low-income housing, is not a function that is 'traditionally exclusively reserved to the State.'" (Id. (quoting Aponte v. Diego Beekman M.H.A. HDFC, No. 16 Civ. 8479 (JPO), 2019 WL 316003, at *13 (S.D.N.Y. Jan. 24,

2019)))  And as to joint conduct, the "Complaint contains no factual allegations regarding any actual joint conduct between the [m]oving Defendants and City agents that could be viewed as giving rise to Plaintiff's constitutional claims."  (Id. at 32)

   None of the arguments made in Plaintiff's objection adequately address Judge Freeman's findings.  First, Plaintiff argues that "Rose Associates, in their capacity as administrators of Henry Hall . . . are recipients of federal benefits and required to comply with Federal Regulations."  (Pltf. Obj. (Dkt. No. 82) at 7)  However, as Judge Freeman notes, such funding, "no matter how extensive, is insufficient to transform otherwise private conduct into state action."  Young v. Halle Hous. Assocs., L.P., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001).

   Plaintiff also argues that "the Rose Associates Defendants were all performing a task that would otherwise be directly performed by the Federal Government – provide qualified low-income individuals with low-income housing."  (Pltf. Obj. (Dkt. No. 82) at 7)  And Plaintiff asserts that "Defendant Zarzuela wrote Mr. Orr a letter [] in her capacity as Senior LIHTC Compliance Administrator acting on behalf of the state," and this letter constitutes "an action performed as a state actor."  (Id. at 8)  But as Judge Freeman correctly concludes, "the provision of housing, for the poor or for anyone else, has never been the exclusive preserve for the state . . . ."  Aponte, 2019 WL 316003, at *13.  Plaintiff has not alleged that Zarzuela is a state official, and merely facilitating low-income housing is not an inherently state function. Accordingly, these allegations are not sufficient to demonstrate state action.

   Finally, Plaintiff argues that "Henry Hall was not mandated to participate, but rather it elected to participate in a joint effort with the state and hired personnel to act as state actors to get the job done."  (Pltf. Obj. (Dkt. No. 82) at 8)  This conclusory statement of a "joint effort," without any factual support, does not demonstrate state action.

Because the Complaint does not plausibly allege that the moving Defendants are state actors, Plaintiff's Section 1983 and New York State constitution claims will be dismissed.

### F.   <u>Remaining Claims</u>

Judge Freeman recommends that Plaintiff's N.Y.C. Admin. Code § 713 claim be dismissed because, "under the law, [the moving Defendants] were not required to commence [] a special proceeding under Section 713."  (R&R (Dkt. No. 76) at 28)  Plaintiff has not objected to this recommendation, and the Court finds no error in Judge Freeman's analysis.  Accordingly, Plaintiff's N.Y.C. Admin. Code § 713 claim will be dismissed.

Judge Freeman also recommends that Plaintiff's FTCA claim be dismissed, because "there is no private right of action under 15 U.S.C. § 45."  (R&R (Dkt. No. 76) at 20-21) Once again, Plaintiff did not object to this recommendation, and the Court finds no error in Judge Freeman's analysis.  Accordingly, Plaintiff's FTCA claim will be dismissed.

### G.   <u>Leave to Amend</u>

For the reasons stated above, Plaintiff's claims against the moving Defendants under 42 U.S.C. § 1983, the New York State constitution, the Rehabilitation Act, N.Y.C. Admin. Code § 713, and the FTCA will be dismissed.

The Second Circuit has cautioned that district courts "should not dismiss [a <u>pro</u> <u>se</u> claim] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).  "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'"  <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) (<u>per</u> <u>curiam</u>)).

Plaintiff cannot allege facts that would salvage his claims under the Rehabilitation Act, the FTCA, or Section 713.  Accordingly, leave to amend will be denied as to these claims.

As to Plaintiff's Section 1983 and New York State constitution claims, Judge Freeman recommends that dismissal be with leave to amend, to the extent that Plaintiff's claims "relate to civil process."  (R&R (Dkt. No. 76) at 28-29, 33)  Judge Freeman states that "Plaintiff may be able to allege facts giving rise to an inference that the [m]oving Defendants acted jointly with City officials to effect his removal from the apartment at Henry Hall and to deny him later access to retrieve his property. . . ."  (Id. at 33)

In their objections, Defendants contend that Plaintiff should not be granted leave to amend his Section 1983 and state constitution claims, because Plaintiff has not and "cannot . . . allege that [the moving] Defendants, as individuals, received [government] funding."  (Def. Obj. (Dkt. No. 78) at 14)  Defendants further argue that any such claim would have to "connect[] property management employees to a property management company to a building's landlord to the state," which Defendants claim is a bridge too far.  (Id.)  Defendants do not address Judge Freeman's "civil process" point, however, and whether Plaintiff could plead facts demonstrating that "the [m]oving Defendants acted jointly with City officials to effect his removal from the apartment at Henry Hall and to deny him later access to retrieve his property. . . ."  (R&R (Dkt. No. 76) at 33)

As discussed above, in order to establish joint action, Plaintiff would have to plead facts showing that the moving Defendants and City officials shared a common unlawful goal, and agreed to deprive Plaintiff of rights guaranteed by the U.S. and New York State constitutions.  This Court agrees with Judge Freeman that it cannot be said, at this stage of the proceedings, that there is no "indication that a valid claim might be stated."  Cuoco, 222 F.3d at

112).  Accordingly, Plaintiff is granted leave to amend his Section 1983 and New York State

constitution claims to the extent those claims are premised on civil process.[8]

## **CONCLUSION**

Judge Freeman's Report & Recommendation (Dkt. No. 76) is adopted as set forth

above.  Defendants' motion to dismiss is granted as to Plaintiff's Section 1983 claims, New York

State constitution claims, N.Y.C. Admin. Code § 713 claim, Rehabilitation Act claim, and FTCA

claim.  Defendants' motion to dismiss is otherwise denied.

---

[8]  Judge Freeman notes that nothing in the Complaint suggests that Plaintiff "was criminally charged, detained, prosecuted, tried, convicted, or incarcerated."  (R&R (Dkt. No. 76) at 32) Accordingly, she recommends that Plaintiff not be allowed to pursue any claim against the moving Defendants for "malicious prosecution, denial of the right to a fair trial, cruel and unusual punishment, or any other abuses of criminal process."  (Id.)

In his objections, Plaintiff states that he did plead a "wrongful arrest [] on November 6th, 2018, after the filing of my pleadings on October 25th, 2018 in this Court as retaliation by the Rose Associates defendants," and that this allegation was made "under a Letter Motion filed as Docket number 45 on March 25, 2019, Leave to Supplement Pleadings."  (Pltf. Obj. (Dkt. No. 82) at 20 (citing March 26, 2019 Ltr. (Dkt. No. 45)))

In response to Plaintiff's March 25, 2019 filing, Judge Freeman issued an order directing Plaintiff to "prepare a proposed Amended Complaint . . . and inquire as to whether any of the Defendants have an objection to its filing."  (Apr. 9, 2019 Order (Dkt. No. 56) at 1)  There is no indication in the record that Plaintiff did this.

To the extent Plaintiff wishes to pursue these allegations, then he must, as Judge Freeman states in her April 9, 2019 Order, prepare a proposed Amended Complaint to replace the existing Complaint, and file a motion for leave to amend, attaching the proposed Amended Complaint as an exhibit.  The proposed Amended Complaint should also address claims on which this Court has granted leave to amend.

In his objections, Plaintiff seeks "leave to use correct names of 'Doe' Defendants and update the case caption," and to reorganize his claims as to each Defendant.  (Pltf. Obj. (Dkt. No. 82) at 1, 13-19)  These matters should also be addressed in the proposed Amended Complaint.

Leave to amend is granted as to Plaintiff's Section 1983 and New York State constitution claims, and is otherwise denied.  Any motion for leave to amend must be filed by **May 17, 2020.**  The proposed Amended Complaint must be attached as an exhibit to the motion.

The Clerk of Court is directed to terminate the motions.  (Dkt. Nos. 31, 42, 62, 64, 65, 83, 86, 87)

Dated: New York, New York
      April 17, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge